FILED
CLERK

5/29/2013 1:53 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

DR. MARIA-LUCIA ANGHEL,

                Plaintiff,

           -against-

NEW YORK STATE DEPARTMENT OF
HEALTH, CLAUDIA MORALES BLOCH,
individually and in her official capacity,
KATHRYN LEONE, individually and in her
official capacity, HAROLD ROSENTHAL,
individually and in his official capacity,
LABORATORY INVESTIGATIVE
UNIT:WADSWORTH CENTER, EILEEN
HEAPHY, individually and in her official
capacity, COLLEEN FLOOD, individually and
in her official capacity MICHAEL WEINSTEIN,
individually and in his official capacity,
STEPHAN PETRANKER, M.D., individually
and in his official capacity, OFFICE OF
PROFESSIONAL MISCONDUCT, KEITH
SERVIS, individually and in his official
capacity, ROY NEMERSON, individually and in
his official capacity, NIRAV SHAH, M.D.
individually and in his official capacity,
ANDREW CUOMO, ERIC T.
SCHNEIDERMAN, individually and in his
official capacity, UNITED HEALTHCARE,
MICHAEL STEPHANO, individually and as an
employee of United Healthcare, THE BOARD
OF PROFESSIONAL MEDICAL CONDUCT,

                Defendants.

--------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
2:12-CV-03484 (ADS)(WDW)

**APPEARANCES:**

**Law Office of Jonathan Bell**
*Attorneys for the Plaintiff*
30 Jericho Executive Plaza 100e
Jericho, NY 11753
   By:  Jonathan Bell, Esq., Of Counsel

1

**Law Offices of Joseph F. Kilada**
*Attorneys for the Plaintiff*
1 Old Country Road
Suite 347
Carle Place, NY 11514
   By:  Joseph F. Kilada

**Eric T. Schneiderman, Attorney General of the State of New York**
*Attorneys for the Defendants New York State Department of Health, Claudia Morales Bloch,*
*Kathryn Leone, Harold Rosenthal, Laboratory Investigative Unit: Wadsworth, Eileen Heaphy,*
*Colleen Flood, Michael Weinstein,  Stephan Petranker, MD., Office Of Professional Medical*
*Conduct, Keith Servis, Roy Nemerson, Nirav Shah, MD., Andrew Cuomo, Eric T. Schneiderman,*
*The Board of Professional Medical Conduct*
200 Old County Road, Suite 240
Mineola, NY 11501
   By:  Ralph Pernick, Assistant Attorney General

**Robinson & Cole, L.L.P.**
*Attorneys for the Defendants United HealthCare and Michael Stephano*
Financial Centre
P.O. Box 10305
Stamford, CT 06904-2305
   By:  Joseph Lawrence Clasen, Esq., Of Counsel

**Robinson & Cole**
*Attorneys for the Defendant United HealthCare*
280 Trumbull Street
Hartford, CT 06103
   By:  Laura Torchio, Esq., Of Counsel


**SPATT, District Judge**.

        On July 13, 2012, the plaintiff Dr. Maria-Lucia Anghel filed this action against various

New York State entities, senior state officials, and United HealthCare.  The complaint asserts

numerous causes of action, including violations of due process and equal protection, fraud, and

conversion.  Presently pending before the Court are three motions:  (1) a motion by the

defendants the New York State Department of Health, Governor Andrew Cuomo, Attorney

General Eric T. Schneiderman, and related parties to dismiss the amended complaint as against

them pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (Fed. R. Civ. P.) for lack

2

of subject matter jurisdiction; and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted; (2) a motion by several individual defendants, most of whom are DOH employees, to dismiss the amended complaint as against one of them pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process and as against all of them pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted; and (3) a motion by defendants United HealthCare and one of its employees to dismiss the amended complaint as against them pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## I.  BACKGROUND

### A.  Factual Background

Before delving into the facts of this case, the Court will describe the procedural process in New York State for investigation of professional misconduct by physicians.  The Department of Health Office of Professional Medical Conduct (OPMC) initially conducts investigations and makes the decision to bring disciplinary proceedings.  Once charges are brought, OPMC's role is over.  At that point, the matter is turned over to the Bureau of Professional Medical Conduct (BPMC), a bureau within the Division of Legal Affairs of the Department of Health.  Bureau attorneys prepare charges and prosecute those charges before an Administrative Law Judge (ALJ) and Hearing Committee of the Board of Professional Medical Conduct.  The ALJ is not entitled to vote.  See Public Health Law § 230(10)(e).  If any of the charges are sustained by the Hearing Committee, it imposes a penalty.  See Id. § 230 (10) (i).  The physician may then seek administrative review or commence litigation pursuant to Article 78 of the Civil Practice Law and Rules (CPLR).

Relevant here, the Plaintiff is a physician board-certified in anesthesiology and pain management and licensed to practice medicine in New York. On or about April 16, 2008, the Plaintiff was charged by the BPMC with 25 specifications of professional misconduct; including fraudulent practice; negligence on more than one occasion; incompetence on more than one occasion; gross negligence; willful failure to comply with federal law and regulations; excessive tests and treatment; and failure to maintain records. The charges related to the Plaintiff's treatment of seven patients and her operation of a laboratory at her offices. The ALJ and the Hearing Committee conducted a hearing over the course of 19 days. At the hearing, the Plaintiff was represented by an attorney and had the opportunity to present testimony and evidence. On July 15, 2009, following the hearing, the Hearing Committee sustained each specification except for the charge of incompetence. The Hearing Committee revoked the Plaintiff's license to practice medicine in New York and imposed a $240,000 fine.

The Plaintiff subsequently challenged the revocation and fine by bringing a CPLR Article 78 proceeding in the Appellate Division, Third Department. The Appellate Division issued a detailed decision in July 2011, dismissing the petition. See Matter of Anghel v. Daines, 86 A.D.3d 869, 927 N.Y.S.2d 710 (3d Dept 2011). The Appellate Division determined that: (1) the Plaintiff's assertions that various evidentiary and procedural errors deprived her of her right to a fair hearing and due process were without merit; (2) substantial evidence supported the Committee's decision to sustain the specification alleging that the Plaintiff willfully failed to comply with federal law and regulations governing the practice of medicine; (3) the ample record supported the Committee's findings of fraudulent practice and excessive tests; (4) substantial evidence supported the Committee's finding of a failure to maintain adequate medical records; and (5) there was no reason to disturb the Committee's finding that the Plaintiff was

4

"intentionally deceitful" and wholly lacking credibility.  The Plaintiff's motion for leave to

appeal to the New York Court of Appeals was denied.

**B.  Procedural History**

On July 13, 2012, the Plaintiff filed this action against Department of Health and three of

its subdivisions, namely the Laboratory Investigative Unit: Wadsworth Center (LIU), the Office

of Professional Misconduct (OPMC), and the BPMC (collectively DOH); the Commissioner of

DOH Nirav Shah, MD.; Governor Cuomo; and Attorney General Schneiderman (collectively the

Senior State Officials); Claudia Morales Bloch, Kathryn Leone, Harold Rosenthal, Eileen

Heaphy, Colleen Flood, Michael Weinstein, Stephan Petranker, MD., Keith Servis, and Roy

Nemerson (collectively the Individual Defendants); and United HealthCare and one of its

employees, Michael Stephano (the United Defendants).  The gravamen of the Plaintiff's

allegations is that her medical license was wrongfully and unconstitutionally revoked.

On August 23, 2012, the Plaintiff filed a 78-page, 525-paragraph amended complaint

against all the Defendants.  According to the amended complaint, which is rambling and

indecipherable in parts, Bloch acted as the associate counsel for the OPMC and investigated,

administered, and prosecuted the charges brought against the Plaintiff.  (Am. Compl. ¶ 6.)

Leone acted as the Assistant Attorney General in 2009 and represented DOH in the

Article 78 proceeding.  (Id. ¶ 7.)

Rosenthal was an attorney within the DOH Bureau of Litigation. (Id. ¶ 8.)

Heaphy was the Senior Investigator for LIU who investigated the Plaintiff's office and

testified as a fact witness at the administrative hearing (Id. ¶ 10.).

Flood was the director of the Physician Office Laboratory Evaluation Program (POLEP),

which reviews physician-owned laboratories pursuant to a federal grant (Id. ¶ 11.).

Weinstein was a LIU attorney who issued a subpoena for laboratory records from the Plaintiff's office (Id. ¶ 12). .

Petranker is a physician who testified as an expert witness at the administrative hearing on behalf of the DOH (Id. ¶ 13.)

Servis was the Director of the OPMC and had the responsibility of choosing those cases to be presented to an investigation committee (Id. ¶ 15).

Nemerson was Deputy Counsel of the Bureau of Litigation and Bloch's supervisor (Id. ¶ 16).

The Plaintiff also alleges that (1) the United Defendants wrongly reported the Plaintiff to POLEP for improper billing practices; (2) Stephano created a compact disk (CD) with manipulable, false data regarding the Plaintiff's billing; and (3) Stephano made false misrepresentations under oath and in his affidavit during the administrative hearing.

The Plaintiff interposed thirteen causes of action against the varying parties sounding in (1) unreasonable search and seizure; (2) abuse of process; (3) first amendment retaliation; (4) perjury; (5) subornation; (6) fraud upon a court; (7) state law trespass; (8) fraud pursuant to Fed. R. Civ. P. 9(b) and CPLR 3016; (9) due process and equal protection violations in violation of 42 U.S.C. § 1983; (10) substantive due process; (11) stigma-plus; (12) interference with her rights in violation of 42 U.S.C. § 1985; and (13) state law conversion. The Plaintiff also seeks a declaratory judgment rendering null and void BPMC's revocation order. Finally, the Plaintiff also sought a preliminary injunction and temporary restraining order ("TRO"), essentially requesting the reinstatement of her medical license. The Court previously denied the motion for a preliminary injunction and a TRO.

DOH and the Senior Official Defendants then moved to dismiss the amended complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.  The Individual Defendants moved to dismiss the amended complaint as against Heaphy for insufficient service of process and as against all of them for failure to state a claim upon which relief can be granted.  Lastly, the United Defendants moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted.  The Plaintiff filed separate oppositions papers as to each motion, all of which the Defendants contend violate the Court's individual rule IV(b)(i) because the Plaintiff's memoranda of law, including the Table of Contents and Table of Authorities, exceeds 25 pages.  However, because this 25-page limit does not include the Table of Contents and Table of Authorities, the Court finds that the Plaintiff's Opposition to the Individual Defendants' Motion to Dismiss and the United Defendants Motion to Dismiss complies with this Court's individual rules.  While the Court finds that Plaintiff's Opposition to the State Entity and Senior State Official Defendants exceeds the aforementioned 25-page limit, the Court has discretion to consider documents filed in violation of procedural rules." Church & Dwight Co. v. Kaloti Enters. of Mich., L.L.C., 07 Civ. 0612 (BMC), 2011 WL 4529605, at *1 n. 1 (E.D.N.Y. Sept. 27, 2011) (citation and internal quotation marks omitted).  Therefore, with regard to this situation only, the Court will consider all of the Plaintiff's Opposition papers.

The Plaintiff also seeks permission to file sur-reply papers in opposition to the Defendants' reply papers.  "Motions for leave to file sur-reply information [] are subject to the sound discretion of the court." De Pedrero v. Schweizer Aircraft Corp., 635 F. Supp. 2d 251, 258 (W.D.N.Y. 2009).  In that regard, the Court notes that the Defendants raise at least one new argument in its reply, namely, that the Plaintiff's opposition papers are procedurally improper.

The Plaintiff's response to this argument in its proposed sur-reply memoranda provides relevant information to the disposition of this case. Therefore, the Plaintiff's request for permission to file a sur-reply is granted. The Defendants' request for permission to file a response to the Plaintiff's sur-reply memoranda is denied. The Court will now address the Defendants' motions to dismiss in turn.

## II.    DISCUSSION

### A. <u>As to the Motion to Dismiss by DOH and the Senior State Officials</u>

#### 1. <u>Rooker-Feldman and Preclusion</u>

Although not urged by DOH and the Senior State Officials, the Court finds that it lacks subject matter jurisdiction over the claims asserted against them by virtue of the <u>Rooker–Feldman Doctrine</u>, which mandates that a federal district court may not review collateral attacks upon a state court determination. <u>See</u> <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 476, 103 S. Ct. 1303, 75 L.Ed.2d 206 (1983) (explaining that review of a final determination by a state court can be obtained only by the United States Supreme Court). "The precise demarcations of the <u>Rooker–Feldman</u> doctrine on the one hand, and the preclusive effect of common law res judicata and collateral estoppel on the other, remain obscure. Some courts hold them effectively synonymous, interchangeable or at least co-extensive." <u>Harris v. New York Dept. of Health</u>, 202 F. Supp. 2d 143, 158 (S.D.N.Y. 2002); <u>see also</u> <u>Hachamovitch v. DeBuono</u>, 159 F.3d 687, 696 (2d Cir. 1998) (noting that "[w]hether the <u>Rooker–Feldman</u> doctrine is coextensive with preclusion or extends beyond preclusionary rules is a question that has perplexed courts and commentators.").

However, the doctrines differ in fundamental ways that may materially affect how a case may be decided. In <u>Feldman,</u> the Supreme Court expressly declared as a ground for its holding

that to the extent plaintiffs had sought appellate review in federal district court of a determination by a state court, "the District Court lacked subject matter jurisdiction over the complaints." Feldman, 460 U.S. at 482.   A dismissal so grounded is not a judgment on the merits of the underlying case and does not of itself preclude a subsequent suit on the same issues.  See Fed. R. Civ. p. 41(b); St. Pierre v. Dyer, 208 F.3d 394, 399–401 (2d Cir. 2000); 18 James Wm. Moore et al, Moore's Federal Practice (3d ed. 1997) ("Moore's Federal Practice") § 131.30 [3][b]. By contrast, res judicata and collateral estoppel, resting on common law principles, presupposes that the substance of the issues or claims deemed precluded was addressed in the prior litigation and embodied in a corresponding final judgment that constitutes a ruling on the merits.  See G. & C. Merriam Co. v. Saalfield, 241 U.S. 22, 28, 36 S. Ct. 477, 60 L. Ed. 868 (1916); Shamley v. ITT Corp., 869 F.2d 167, 170 (2d Cir. 1989).

Whether viewed under the doctrine of Rooker Feldman or preclusion principles, the Plaintiff's claims against DOH and the Senior State Officials cannot go forward.   In the prayer for relief, the Plaintiff's complaint demands, as equitable remedies, that DOH be ordered to (1) restore the Plaintiff's license to practice medicine; (2) expunge "all denigrating references" to the Plaintiff in DOH's records; and (3) issue a public apology to the Plaintiff.   This relief goes to the crux of the state court's judgment.

The State Appellate Division ruled unequivocally that DOH's determination was supported by the record and that the DOH decision was not arbitrary and capricious.  Moreover, to redress the claimed injury, the equitable remedy the Plaintiff seeks represents a retrospective challenge demanding injunctive relief to undo the license revocation judgment rendered by the Hearing Committee.  The rule was stated in Harris:

> To this extent, [the Plaintiff's] federal claim is not a general and prospective
> attack on the constitutionality of a state rule, such as the absence of procedures

permitting the reopening of disciplinary proceedings challenged in <u>Hachamovitch</u>, but a particularized challenge directly or indirectly contesting the state court's adjudication as it affected only him.   Reduced to its core, therefore, in this action [the Plaintiff] 'in essence' asks this Court to reverse the State's revocation of his medical license."

So viewed, [the plaintiff] 's claim effectively would require the Court to perform a direct appellate review function of examining the state court's ruling . . . and granting him essentially the same relief he failed to obtain before the Appellate Division on the basis of the same record as well as on essentially the same grounds that court deemed insufficient.  It is precisely this form of stark second-guessing and undue federal intrusion that the <u>Rooker–Feldman</u> doctrine intended to overcome by depriving federal district courts of subject matter jurisdiction over cases that essentially demand appellate review of judgments rendered in state judicial proceedings and thus seek to relitigate claims identical or inseparably linked with matters already resolved by the state courts.

<u>Harris</u>, 202 F. Supp. 2d at 165.

Even though monetary damages could not be recovered in the article 78 proceeding, "the central issue [the Plaintiff] alleges as the basis of his federal constitutional claim[s] we[re] actually and necessarily decided against him in the Article 78 proceeding by the Appellate Division's ruling that the State's revocation of [the plaintiff]'s medical license was not arbitrary or capricious, was not contrary to law and was supported by a rational and substantial basis in fact." <u>Id.</u> at 172.  Accordingly, the Court concludes that by application of the <u>Rooker–Feldman</u> doctrine, the Court lacks subject matter jurisdiction over the causes of action against DOH and the Senior State Officials.

Furthermore, the Plaintiff's causes of action against these defendants are barred by collateral estoppel.  Pursuant to 28 U.S.C. § 1738, federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." <u>Migra v. Warren City School Dist. Bd. of </u>Educ., 465 U.S. 75, 81, 104 S. Ct. 892, 79 L. Ed.2d 56 (1984).  In New York, collateral estoppel, or issue preclusion, precludes a party from re-litigating in a subsequent action or proceeding an issue

clearly raised in a prior action or proceeding and decided against that party, whether or not the

tribunals or causes of action are the same.  See Ryan v. New York Tel. Co., 62 N.Y.2d 494, 500,

478 N.Y.S.2d 823, 467 N.E.2d 487 (1984)); Davis v. Halpern, 813 F.2d 37, 39 (2d Cir. 1987)

(while res judicata does not apply to requests for monetary damages on civil rights claims by

reason of a prior judgment in an Article 78 proceeding, collateral estoppel applies).

   The Court finds that the Plaintiff's vague and conclusory due process and evidentiary

arguments were fully and fairly litigated on the merits in the article 78 proceeding.  In particular,

the State Appellate Division concluded as follows:

> "[W]e are unpersuaded by petitioner's assertions that various evidentiary and
> procedural errors deprived her of her right to a fair hearing and due process.
> . . .
> Petitioner first challenges the admission of BPMC's exhibit No. 12, a CD
> containing a spreadsheet data file detailing claims submitted by petitioner to
> United Healthcare, the administrator of a healthcare benefit plan, for services she
> billed from 1994 to 2007 for patients C through G, and exhibit No. 12A, a hard
> copy printout of the spreadsheet.  We find no record support for petitioner's
> contentions that the CD and the spreadsheet that were admitted into evidence at
> the hearing – and the spreadsheet that is now included in the record on appeal –
> are illegitimate and/or uncertified copies or that BPMC is withholding copies of
> the CD.  Michael Stephano, a United Healthcare employee, testified that he
> created the spreadsheet using data stored in the regular course of business in
> United Healthcare's database and certified that the data file was a true, complete
> and accurate record of the claims submitted by petitioner.  Although copies of the
> original CD were apparently made and provided to petitioner and the
> Administrative Law Judge (hereinafter ALJ) which, when viewed on the ALJ's
> computer, did not appear to be identical to the original CD, the Committee
> considered the original CD in evidence, which was also projected onto a screen
> during the hearing.
>
> We also reject petitioner's challenge to the admission of this evidence on the
> ground that the spreadsheet constituted inadmissible hearsay and was not
> sufficiently reliable or accurate. Although it was discovered during the hearing
> that the spreadsheet contained certain date and code description errors, these
> errors were, for the most part, not substantive and affected only a small
> percentage of the data on the spreadsheet.  Also, the Committee was made aware
> of the error by petitioner's cross-examination of the witnesses and the admission
> of a clarifying affidavit from Stephano, and the Committee had before it copies of
> the actual electronic claim submissions that petitioner made to United Healthcare

from 1999 until 2004, substantiating the entries in the spreadsheet for that period. As the exhibits were properly certified and authenticated, and given the considerable leeway afforded the admission of evidence at the hearing, we discern no abuse of discretion in the ALJ's decision to admit them.

Petitioner also has not shown that she was deprived of a fair hearing and due process by any other of the ALJ's various rulings.  The ALJ did not abuse his discretion in granting BPMC's motion to withdraw patient A's testimony without striking all of the charges related to patient A, as patient A's medical records supported the remaining charges related to her.  The ALJ also acted within the bounds of his authority when he denied petitioner's motion for a mistrial based upon patient B's failure to return to testify after evidence surfaced calling into question the veracity of a limited portion of her testimony.  Petitioner was able to introduce evidence indicating that patient B may have misrepresented her credentials during the hearing and the ALJ advised the Committee that she did not respond to a subpoena.  In sum, the claimed evidentiary errors were not so severe as to infect the entire proceeding with unfairness given petitioner's full opportunity to contest the evidence against her and present her own case

. . .

Petitioner also claims that her due process rights were violated because BPMC did not offer her an additional interview to allow her to respond to allegations concerning patients C through G before charges relating to those patients were investigated and added (see Public Health Law § 230 [10] [a] [iii]).  We cannot agree.  It is sufficient that petitioner received two preinvestigatory interviews regarding allegations relating to patients A and B, and BPMC offered petitioner an additional interview regarding the other patients before the hearing was convened, which she declined. . .  In any event, petitioner's due process rights were protected by her receipt of the detailed amended statement of the charges against her . . . In addition, petitioner was provided adequate time to prepare for the hearing, and the Committee's refusal to grant her a second adjournment was not unreasonable and did not deprive her of due process. . . We have also examined petitioner's claims that BPMC engaged in misconduct throughout the pendency of the proceedings against her and found them to be wholly unsubstantiated.

Matter of Anghel, 86 A.D.3d at 869-871, 927 N.Y.S.2d at *2-3.

An appellate court's review of a BPMC determination is properly accorded estoppel

effect under New York law.  See Damino v. O'Neill, 702 F. Supp. 949, 954 n. 1 (E.D.N.Y. 1987)

(plaintiff physician whose license was revoked after a disciplinary hearing was collaterally

estopped from claiming in federal court that he was denied a fair hearing and procedural due

process where those claims were raised before and decided by the Appellate Division).  In light

of the extensive treatment the Appellate Division afforded the plaintiff's procedural and

evidentiary challenges to the hearing, the Court finds that the Plaintiff's claims against DOH and

the Senior State Officials are barred by collateral estoppel.

### 2. Eleventh Amendment

The Plaintiff's claims against these defendants are also barred by the Eleventh

Amendment and the principles of sovereign immunity.  The Second Circuit has declined to

decide whether a motion to dismiss made on sovereign immunity grounds is properly reviewed

as a challenge to the Court's subject matter jurisdiction under Rule 12(b)(1) or whether it is more

appropriately addressed in the context of a Rule 12(b)(6) motion.  See State Emps. Bargaining

Agent Coal. v. Rowland, 494 F.3d 71, 77 n. 4 (2d Cir. 2007) (citing Wisc. Dep't of Corr. v.

Schacht, 524 U.S. 381, 391 (1998) (stating "we have not decided" whether "Eleventh

Amendment immunity is a matter of subject matter jurisdiction")).

> "The distinction is significant: while [the Court must] accept all factual allegations in a
> complaint as true when adjudicating a motion to dismiss under [Rule] 12(b)(6), [the
> Circuit has] held that, in adjudicating a motion to dismiss for lack of subject-matter
> jurisdiction, a district court may resolve disputed factual issues by reference to evidence
> outside the pleadings, including affidavits."

Id. (internal citations omitted).

Given this ambiguity, the Court will follow the lead of several other district courts within

this Circuit and apply the Rule 12(b) (6) standard in analyzing the Defendants' sovereign

immunity arguments.  See McMillan v. N.Y. State Bd. of Elections, 2010 WL 4065434, at *3

(E.D.N.Y. Oct. 15, 2010) (looking "only to the pleadings and to state and federal law" to resolve

questions regarding sovereign immunity); Jude v. New York, 2009 WL 928134, at * 1 n. 2

(S.D.N.Y. Mar. 30, 2009) (applying the Rule 12(b)(6) standard to sovereign immunity analysis).

The Supreme Court has clarified the pleading standards applicable in evaluating a motion to dismiss under Rule 12(b)(6).  First, in Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the Court disavowed the well-known statement in Conley v. Gibson, 355 U.S. 41, 45–46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  See Twombly, 550 U.S. at 561 (quoting Conley, 355 U.S. at 45–46) (internal quotation marks omitted).  Instead, to survive a motion to dismiss under Twombly, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face."  Id. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Id. at 555 (citations and internal quotation marks omitted).

"The Eleventh Amendment bars suits in federal court by citizens against a state and its agencies, absent waiver of immunity and consent to suit by the state or abrogation of constitutional immunity by Congress."  Miller v. Carpinello, No. 06 Civ. 12940(LAP), 2007 WL 4207282, at *2 (S.D.N.Y. Nov. 20, 2007).   Furthermore, "the doctrine of sovereign immunity applies not only to a state but to a state agency such as the DOH."  Cmty. Healthcare Assoc. of New York v. New York State Dep't of Health, 10 CIV. 8258 TPG, 2011 WL 2162983 at *3 (S.D.N.Y. May 26, 2011) ; see also Figueras v. Walker, 95-CV-0931, 1996 U.S. Dist. LEXIS 2098, at *4 (N.D.N.Y. Feb. 15, 1996) (holding that the Eleventh Amendment barred plaintiff's civil rights claims against the BPMC); Diblasio v. Novello, 01 Civ. 4498, 2002 U.S. Dist. LEXIS 18424, at *26 (S.D.N.Y. Sept. 30, 2002) (DOH is an arm of the state for purposes of the

Eleventh Amendment), vacated, in part, on other grounds, 344 F.3d 292 (2d Cir. 2003), cert. denied, 541 U.S. 988, 124 S. Ct. 2018, 158 L. Ed. 2d 492 (2004); Lee v. New York State Dep't of Health, 2001 U.S. Dist. LEXIS 11287, at *22-23 (S.D.N.Y. Mar. 26, 2001) (same).

The Senior State Officials are also entitled to invoke the Eleventh Amendment as a bar to the Plaintiff's claims against them in their official capacities for retrospective relief.  A suit for damages against a state official in his or her official capacity "is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993); see also Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

Nor can the Plaintiff circumvent the Eleventh Amendment through the doctrine of Ex Parte Young, which "allows a suit for injunctive [or declaratory] relief challenging the constitutionality of a state official's actions in enforcing state law." CSX Transp., Inc. v. New York State Office of Real Prop. Servs., 306 F.3d 87, 98 (2d Cir. 2002) (internal quotation marks and alteration omitted); see also Arthur v. Nyquist, 573 F.2d 134, 138 (2d Cir. 1978).  While the Plaintiff seeks affirmative injunctive relief in the form of reinstatement of her medical license, "[b]ecause an injunction is merely a remedy and [] not a cause of action, a cause of action must exist before injunctive relief may be granted." Lopez v. Wash. Mut. Bank, F.A., No. 1:09–CV–1838, 2010 WL 1558938, at *9 (E.D. Cal. Apr. 19, 2010).  Here, the Plaintiff has not plead a cause of action as against DOH and the Senior State Officials.  Thus, the Plaintiff's request for injunctive relief must be denied.

Finally, although the Eleventh Amendment bars suit against state officials in their official capacities, it does not bar "a suit against a state officer in his [or her] individual capacity for

unconstitutional or wrongful conduct fairly attributable to the officer himself [or herself], so long as the relief is sought not from the state treasury but from the officer personally." <u>Alden v. Maine</u>, 527 U.S. 706, 757, 119 S. Ct. 2240, 2267-68, 144 L. Ed. 2d 636 (1999).  However, to the extent the Senior State Officials were sued in their individual capacities, the claims fail for lack of an allegation of personal involvement.  See <u>Al-Jundi v. Estate of Rockefeller</u>, 885 F.2d 1060, 1065 (2d Cir. 1989).  Indeed, the amended complaint is totally devoid of facts establishing the personal involvement of any of the Senior State Officials.

For the reasons that <u>Rooker-Feldman</u>, collateral estoppel, and the Eleventh Amendment bar relitigation of the Plaintiff's claims against DOH and the Senior State Officials, allowing an amendment of the complaint to enable the Plaintiff to replead her claims would be futile.  See <u>Acito v. IMCERA Group, Inc.</u>, 47 F.3d 47, 54–55 (2d Cir. 1995) (amendment of the complaint is futile where it would fail to cure the deficiencies of the original complaint); <u>see also</u> <u>Milanese v. Rust–Oleum Corp.</u>, 244 F.3d 104, 110 (2d Cir. 2001) (amendment futile where it would not survive a subsequent motion to dismiss); <u>In re American Express Co. Shareholder Litig.</u>, 39 F.3d 395, 402 (2d Cir. 1994).  Accordingly, the Court grants the motion by dismiss the amended complaint by the DHO and the Senior State Officials and the amended complaint is dismissed as to them with prejudice.

**B.  <u>At to the Motion to Dismiss by The Individual State Defendants</u>**

It is not clear if the Individual Defendants were parties to the Article 78 proceeding and, if so, whether the <u>Rooker-Feldman</u> doctrine deprives the Court of subject matter jurisdiction as to the claims against them.  In any event, to the extent the Plaintiff seeks monetary recovery against those Individual Defendants-state employees in their official capacities, the Plaintiff's claims are barred by the Eleventh Amendment for the reasons explained above.

16

Furthermore, the Plaintiff's claims against the individual defendants in their personal capacities are barred by the doctrine of absolute immunity.  The absolute immunity of the common law still exists today and "[i]n enacting § 1983, Congress did not intend to override well-established immunities or defenses under the common law."  Will v. Michigan Dep't of State Police, 491 U.S. 58, 67, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).  Undoubtedly, administrative law proceedings function in a comparable atmosphere and adjudicate similar issues to those settled in judicial proceedings.  See Butz v. Economou, 438 U.S. 478, 508, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978) ("We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages.").  Indeed, administrative proceedings, like the BPMC disciplinary proceedings, are similar to judicial proceedings in that "the disappointment occasioned by an adverse decision, often finds vent in imputations of [malice]." Id. at 513, 98 S. Ct. 2894 (quoting Bradley v. Fisher, 13 Wall. 335, 348, 20 L. Ed. 646 (1872)).  "Therefore, this Court recognizes that absolute immunity extends to certain state officials who take part in the BPMC's disciplinary proceeding." (Bloom v. New York State Com'r of Health, 573 F. Supp. 2d 732, 740 (E.D.N.Y. 2004).

As with administrative law judges, the common law precedents also extend absolute immunity to prosecutors participating in the administrative process.  See Butz, 438 U.S. at 509-10, 98 S. Ct. 2894 (citing Imbler v. Pachtman, 424 U.S. 409, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976) (holding that a state prosecutor was absolutely immune from Section 1983 liability)).  If absolute immunity were not afforded prosecutors, there could be "an adverse effect on the functioning of the criminal justice system, not only by discouraging the initiation of

prosecutions, . . . but also by affecting the prosecutor's conduct of the trial." Id. at 510, 98 S. Ct. 2894 (citations omitted).

Butz also extended this prosecutorial immunity to officials who perform analogous functions to those of a prosecutor. See Id. at 515, 98 S. Ct. 2894 ("[A]gency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity"). Hence, here, this immunity protects the Individual Defendant-state employees for their role in presenting evidence and taking action against the Plaintiff. See Id. at 516, 98 S. Ct. 2894 ("We can see no substantial difference between the function of the agency attorney in presenting evidence in an agency hearing and the function of the prosecutor who brings evidence before the court.").

Similarly, this absolute immunity extends to witnesses, such as Heaphy and non-state employee Petranker, who testified at the administrative hearing. Rolon v. Henneman, 517 F.3d 140, 145 (2d Cir. 2008) ("The Supreme Court has extended absolute immunity to police officers testifying at judicial proceedings on the ground that this type of immunity existed at common law for citizen-witnesses."). The Supreme Court has reasoned that without such immunity, "[a] witness's apprehension of subsequent damages liability might induce . . . self-censorship," either by making witnesses reluctant to come forward in the first place or by distorting their testimony." Briscoe v. LaHue, 460 U.S. 325, 333, 103 S. Ct. 1108, 75 L. Ed.2d 96 (1983). Such self-censorship may "deprive the finder of fact of candid, objective, and undistorted evidence." Id.

Having determined that BPMC disciplinary proceedings are analogous to judicial proceedings, this Court finds that defendants Heaphy and Petranker are entitled to absolute immunity relative to the testimony provided in connection with the Plaintiff's hearing. See

18

Yoonessi v. New York State Bd. for Prof'l Med. Conduct, 03-CV-871S, 2005 WL 645223, at *14 (W.D.N.Y. Mar. 21, 2005) affd, 162 F. Appx 63 (2d Cir. 2006).  Having found that the Plaintiff's claims against Heaphy are barred by the Eleventh Amendment and the doctrine of absolute immunity, the Court need not address the contention of the Individual Defendants that the Plaintiff failed to properly serve Heaphy.  Accordingly, the Court grants the motion by the Individual Defendants and dismisses the amended complaint as against them with prejudice.

**C.**   **As to the Motion to Dismiss by the United Defendants**

The Plaintiff alleges that the United Defendants (1) violated her Fourth and Fourteenth Amendment rights against unreasonable searches; (2) engaged in abuse of process in violation of her Fourth, Fifth, and Fourteenth Amendment rights and New York State law; (3) committed fraud pursuant to Fed. R. Civ. P. 9(b); (4) deprived Plaintiff of her rights without due process and equal protection of the laws in violation of her Fourth, Fifth, Six, and Fourteenth Amendment rights; (5) violated her substantive due process rights and subjected the Plaintiff to stigma-plus; (6) conspired to interfere with the Plaintiff's rights pursuant to U.S.C. § 1985; and (7) committed conversion under New York state law.  As noted above, in support of these causes of action, the Plaintiff alleges that (1) the United Defendants reported the Plaintiff to POLEP for improper billing forms; (2) Stephano created a CD with manipulable, false data regarding the Plaintiff's billing practices; and (3) Stephano made false misrepresentations under oath or in his affidavits during the Plaintiff's administrative hearing.

It does not appear the United Defendants were parties to the article 78 proceeding and to the extent the Plaintiff seeks monetary damages against the United Defendants, the Court finds that the Rooker-Feldman doctrine does not deprive the Court of subject matter jurisdiction as to

the claims against them.  Furthermore, the Eleventh Amendment does not apply to private parties like the United Defendants.

Nonetheless, some of the Plaintiff's causes of action against the United Defendants are invalid on their face.   First, no cause of action lies under Fed. R. Civ. P 9(b), which simply imposes a heightened pleading standard for fraud claims.  Second, the Plaintiff's causes of action for perjury and subornation of perjury fail because "in the absence of statute, no action lies to recover damages caused by perjury or subornation of perjury, whether committed in the course of, or in connection with, a civil action or suit, a criminal prosecution, or other proceeding, and whether the perjurer was a party to or a witness in the action or proceeding."  Liddell v. Smith, 345 F.2d 491, 494 (7th Cir. 1965).

Moreover, the Plaintiff is collaterally estopped from challenging the evidentiary admission of the Stephano CD at the administrative hearing because this issue was fully and fairly litigated before the State Appellate Division.   Lastly, the allegations concerning Stephano's testimony at the administrative hearing are barred by virtue of absolute immunity, which as explained above, protects testifying witnesses from civil liability arising out of their testimony.

The Plaintiff's remaining causes of action against the United Defendants fail to survive scrutiny in the Rule 12(b)(6) context.  For a private party to be subject to Section 1983, a two part test must be performed to determine if there is "fair attribution" to the State of the alleged conduct, i.e. "the conduct causing the deprivation of a federal right [must] be fairly attributable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed.2d 482 (1982).  To find "fair attribution:" (1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by person

for whom the State is responsible"; and (2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor," meaning a state official or a person who has conspired with a state official.  Id.  Indeed, "section 1983 actions against private individuals must be limited, lest private parties [] face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them."  Bloom, 573 F. Supp. 2d at 738 (citation and quotation marks omitted).

That said, a private actor may be considered to be acting under the color of state law for purposes of § 1983 if the private actor was "'a willful participant in joint activity with the State or its agents.'"  See Ciambriello v. County of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)). However, for example, the providing of information to or summoning of police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of § 1983.  See Ginsberg v. Healey Car & Truck Leasing, Inc., 189 F.3d 268, 272 (2d Cir. 1999) ("Healey's provision of background information to a police officer does not by itself make Healey a joint participant in state action under section 1983. . . . Officer Fitzgerald's active role in attempting to resolve the dispute after Healey requested police assistance in preventing further disturbance also does not, without more, establish that Healey acted under color of law." (citations omitted)); Drayton v. Toys 'R' Us Inc., 645 F. Supp. 2d 149, 163 (S.D.N.Y. 2009) ("'[F]urnishing information to the police does not by itself make someone a joint participant in state action under Section 1983.'" (quoting Valez v. City of N.Y., No. 08 Civ. 3875, 2008 WL 5329974, at *3 (S.D.N.Y. Dec. 16, 2008)). Accordingly, the fact that the United Defendants reported the Plaintiff to POLEP because of improper billing forms does not provide a basis for liability under Section 1983.

The plaintiff is correct in stating that a private party may act under color of state law when the private party "conspires with a state official to violate the plaintiff's constitutional rights. . ." Fisk v. Letterman, 401 F.Supp.2d 362, 378 (S.D.N.Y.2005), Report and Recommendation adopted in relevant part, 401 F. Supp. 2d 362 (S.D.N.Y.2005).  To establish a § 1983 conspiracy, a plaintiff must produce evidence of (1) an agreement between the private party and state actors, (2) concerted acts to inflict an unconstitutional injury, and (3) an overt act in furtherance of the goal.  See Carmody v. City of N.Y., No. 05–CV–8084 (HB), 2006 WL 1283125, at *5, 2006 U.S. Dist. LEXIS 25308, at *16 (S.D.N.Y. May 11, 2006) (citing Ciambriello v. County of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002)).  Here, as a matter of law, there is no allegation that the United Defendants were willful participants in a joint activity or that they acted under color of state law as part of a § 1983 conspiracy.

Finally, the plaintiff's reliance on the "state-created danger" doctrine is misplaced.  The "state-created danger" doctrine holds government officials liable for private harms if their "affirmative conduct  . . . communicates, explicitly or implicitly, official sanction of private violence." Okin v. Vill. of Cornwall–On–Hudson Police Dep't, 577 F.3d 415, 429 (2d Cir. 2009); see also Lombardi v. Whitman, 485 F.3d 73, 80 (2d Cir. 2007) (noting potential liability for a government official whose "affirmative act ... creates an opportunity for" a third party to harm a victim).  This doctrine is wholly inapplicable where, as here, the Plaintiff merely alleges that the United Defendants acted under the color of law by summoning the aid of the State to investigate the Plaintiff for committing improper acts and provided the State with information in support of the State's independent investigation of the Plaintiff.

The Plaintiff similarly fails to state a claim under 42 U.S.C. § 1985, which requires pleading of (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the

22

equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.  See Traggis v. St. Barbara's Greek Orthodox Church, 851 F.2d 584, 586-87 (2d Cir. 1988) (citing Griffin v. Breckenridge, 403 U.S. 88, 102-03, 91 S. Ct. 1790 (1971)); see also United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 828–29, 103 S. Ct. 3352, 3356, 77 L. Ed. 2d 1049 (1983) .  A plaintiff must allege each of these elements with "at least some degree of particularity."  Powell v. Workmen's Compensation Board, 327 F.2d 131, 137 (2d Cir. 1964).  Although no allegation of state action is needed to state a claim under 42 U.S.C. § 1985, the complaint must allege that the plaintiff is a member of a protected class or that he was injured as a result of racial or other class-based documentation.  See e.g. Griffin, 403 U.S. at 102-04.

Here, the Plaintiff has not stated her race, and does not allege that the United Defendants discriminated against her on the basis of race or that she is a member of a protected class. Moreover, even if the Plaintiff was a member of a protected class, she alleges no facts that suggest that this was the basis for the alleged violation of her rights.  The Court therefore dismisses the Plaintiff's Section 1985 claim.

Having dismissed the Plaintiff's federal 1983 and 1985 claims, the only remaining cause of action against the United Defendants sounds in state law conversion.

To state a claim for conversion under New York law, a plaintiff must show that "someone, intentionally and without authority, assume[d] or exercise[d] control over personal property belonging to someone else, interfering with that person's right of possession."  Colavito v. N.Y. Organ Donor Network, Inc., 8 N.Y.3d 43, 49–50, 827 N.Y.S.2d 96, 860 N.E.2d 713 (2006) (citation omitted).  Put in other terms, a plaintiff must show (1) a "possessory right or

interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights."  Id. at 50, 827 N.Y.S.2d 96, 860 N.E.2d 713 (citations omitted). Interference with a plaintiff's right to possession may be "by a wrongful: (i) taking; (ii) detention; or (iii) disposal." Corporacion Fruticola De Chincha v. Watermelon Depot, Inc., 2008 W L 2986276, at *4 (S.D.N.Y. July 31, 2008) (citing Pierpoint v. Hoyt, 260 N.Y. 26, 29, 182 N.E. 235 (1932)).  "Some affirmative act – asportation by the defendant or another person, denial of access to the rightful owner or assertion to the owner of a claim on the goods, sale or other commercial exploitation of the goods by the defendant – has always been an element of conversion."  State v. Seventh Regiment Fund, Inc., 98 N.Y.2d 249, 260, 746 N .Y.S.2d 637, 774 N.E.2d 702 (2002) (citations omitted).

In this case, the Plaintiff fails to adequately allege that it that it possessed legal ownership or a superior right of possession to a "specific identifiable thing" over which the United Defendants exercised unauthorized dominion.  Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A., 481 F. Appx 622, 627 (2d Cir. 2012) (citation omitted).  Indeed, the Plaintiff cites no authority suggesting that a medical practice could suffice as a "specific identifiable thing," the unauthorized dominion of which, provides a basis for a conversion claim.  Thus, the Court dismisses the Plaintiff's claim for conversion against the United Defendants.

### III. CONCLUSION

In sum, the Court finds that the Plaintiff failed to properly plead any cause of action. Thus, it is hereby

**ORDERED**, that the motion to dismiss the amended complaint by DOH and the Senior State Official Defendants is granted and the complaint is dismissed as to them with prejudice; and it is further;

24

**ORDERED**, that the motion to dismiss the amended complaint by the Individual Defendants is granted and the complaint is dismissed as to them with prejudice; and it is further;

**ORDERED**, that the motion to dismiss the amended complaint by the United Defendants is granted and the complaint is dismissed as to them with prejudice; and it is further;

**ORDERED**, that the Clerk of the Court is respectfully directed to mark the case as closed.

**SO ORDERED.**

Dated: Central Islip, New York
May 29, 2013

         _/s/ Arthur D. Spatt_____
           ARTHUR D. SPATT
        United States District Judge